**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7_8_14_

------------------------------------------------ X

ALAN SANTOS-BUCH,

    **Plaintiff,**

  - against -

**FINANCIAL INDUSTRY**
**REGULATORY AUTHORITY, INC.,**

    **Defendant.**

------------------------------------------------ X

**OPINION AND ORDER**

**14-cv-651 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

   Alan Santos-Buch brings this action for breach of contract and invasion of privacy against the Financial Industry Regulatory Authority ("FINRA").[1] Santos-Buch seeks (1) a declaratory judgment to prohibit notice of a 1997 FINRA disciplinary action as a WebFile, (2) removal of the 1997 notice of disciplinary action from FINRA's BrokerCheck database, (3) a judgment permanently enjoining FINRA from disclosing Santos-Buch's disciplinary action in responses to inquiries it receives on its BrokerCheck database, (4) damages for

---

[1]  *See* Second Amended Complaint ("Am. Compl.") ¶¶ 63-139.

1

breach of contract, and (5) damages for invasion of privacy.[2]  Santos-Buch seeks

both compensatory and punitive damages related to these claims.[3]  FINRA now

moves to dismiss the Amended Complaint arguing   that the Court lacks subject

matter jurisdiction to hear this case because Santos-Buch has failed to exhaust his

administrative remedies.[4]  For the reasons set forth below, FINRA's motions to

dismiss are GRANTED.[5]

## II.   BACKGROUND

### A.   The Parties

#### 1.   FINRA

FINRA is a self-regulated organization ("SRO")  incorporated in

Delaware.[6]  Under the Maloney Act of 1938, FINRA is registered with the SEC as

---

[2]       *See id.*

[3]       *See id*.

[4]       *See* Defendant's Memorandum of Law in Support of Motion to
Dismiss ("Def. Mem.") at 1.

[5]       On March 3, 2014, FINRA moved to dismiss the original Complaint.
*See* Docket No. 9.  After Santos-Buch twice amended the Complaint, FINRA
moved to dismiss the Second Amended Complaint.  *See* Docket No. 19.  However,
FINRA neither renewed nor withdrew its original motion.  As such, this Order
closes both motions.

[6]       *See* Am. Compl. ¶ 2.

a national securities association.[7]  FINRA was established in 2007 to assume the member firm regulatory functions of the National Association of Securities Dealers, Inc. ("NASD") and the New York Stock Exchange.[8]  FINRA is the successor to and has assumed the legal responsibilities of the regulatory subsidiary of the NASD, NASD Regulation, Inc. ("NASDR").[9]

### 2.    Alan Santos-Buch

From 1986 through 1996, Santos-Buch was a Series 7 licensed registered financial services advisor (stockbroker) employed by several members of the NASD.[10]  As an employee of NASD registered firms, Santos-Buch was subject to the NASD's disciplinary rules.[11]  Santos-Buch has not been employed by any NASD registered firm since 1996.[12]

### B.    The Central Registry Depository and BrokerCheck Databases

---

[7]    *See* 15 U.S.C. §78-o3

[8]    *See* Am. Compl. ¶ 2.

[9]    *See id.*

[10]    *See id.* ¶ 17.

[11]    *See id.* ¶ 18.

[12]    *See id.* ¶ 19.

FINRA is required to maintain registration information, including records related to disciplinary proceedings.[13]  FINRA maintains the necessary information in a computer database called the Central Registry Depository ("CRD").[14]  The Securities Exchange Act ("Exchange Act") requires that certain aspects of a representative's CRD file be made available to the public through BrokerCheck.[15]

On December 18, 1998, the NASDR submitted a proposal to make a portion of the CRD's registration information available on the Internet.[16]  The SEC approved the proposal, and on August 16, 1999, the NASDR made certain BrokerCheck information available on the Internet.[17]  To obtain BrokerCheck information one must go to FINRA's website, submit an information request form, and agree to FINRA's terms of service.[18]  In addition, to obtain information on a

---

[13]    *See id.* ¶ 9.

[14]    *See id.*

[15]    *See id.*

[16]    *See id.* ¶ 33.

[17]    *See id.*

[18]    *See id.* ¶ 34.

representative whose registration expired prior to August 16, 1999, one must take the additional step of clicking "Get Detailed Report."[19]

### C.   Santos-Buch's Settlement with the NASDR

In 1997, Santos-Buch executed an Acceptance, Waiver, and Consent ("AWC") Agreement with NASDR to accept a settlement for an alleged rule violation.[20]   Pursuant to the settlement, Santos-Buch agreed to a thirty day suspension and a ten thousand dollar fine.[21]

### D.   Public Disclosure of Santos-Buch's Disciplinary Action

At the time of Santos-Buch's settlement, NASD Rule IM 8310-2 ("IM-8310-2") governed public disclosure of disciplinary actions.[22]   Under IM 8310-2, disciplinary information was promptly released to "the membership and to the press concurrently."[23]

---

[19]   *See id.*

[20]   *See id.* ¶ 22.

[21]   *See id.* ¶ 24.

[22]   *See id.* ¶¶ 25-26.

[23]   *Id.* ¶ 26.

Originally, the CRD did not provide access to information of people who were no longer associated with an NASD member firm.[24]  On February 7, 2000, however, the SEC approved an amendment to IM 8310-2 that allowed the CRD to include disciplinary information for individuals who had been associated with a member firm within the prior two years.[25]  Because Santos-Buch had not been associated with a member firm in four years, his disciplinary information was not initially included in the CRD.[26]

### E.    2009 Amendment to Rule 8312

In 2009, FINRA proposed and the SEC approved an amendment to FINRA Rule 8312.[27]  The rule provided that "Final Regulatory Actions,"as defined by U4 registration forms, for people who were formerly associated with a member firm would become permanently available.[28]  Under the U4 registration form, Santos-Buch's AWC is a final regulatory action.[29]  Thus, information regarding

---

[24]    *See id.* ¶ 32.

[25]    *See id.* ¶ 36.

[26]    *See id.*

[27]    *See id.* ¶ 37.

[28]    *Id.*

[29]    *See id.* ¶ 38.

Santos-Buch's AWC became available on the BrokerCheck website.[30]  In addition to BrokerCheck and FINRA's Final Disciplinary Action online database, FINRA has also created a WebFile that includes Santos-Buch's disciplinary action as a searchable PDF.[31]

### F.    Santos-Buch's Claims

Santos-Buch asserts that FINRA Rule 8310-2, which governed public disclosure at the time of the settlement, allowed only a one time dissemination to members and the press.[32]  Thus, Santos-Buch argues that FINRA should not be allowed to publish his disciplinary action on FINRA's website.[33]  Santos-Buch alleges that public disclosure of his disciplinary action violates FINRA's own rules and the terms of his AWC Agreement.[34]  Additionally, Santos-Buch alleges that FINRA is giving retrospective effect to the 2009 Amendment to Rule 8312, depriving him of vested Fifth Amendment constitutional rights.[35]

---

[30]    *See id.* ¶ 39.

[31]    *See id.* ¶ 49.

[32]    *See id.* ¶ 26.

[33]    *See id.* ¶¶ 27-28.

[34]    *See id.* ¶¶ 9, 57.

[35]    *See id.* ¶¶ 9, 39.

## III.   APPLICABLE LAW

### A.   Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert by motion the defense that the Court lacks subject matter jurisdiction to hear a claim. Federal courts have limited subject matter jurisdiction and may not entertain matters when they do not have jurisdiction.[36] "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."[37] Courts also have an "independent obligation to establish the existence of subject-matter jurisdiction."[38] In considering a motion to dismiss for lack of subject-matter jurisdiction, the court must assume the truth of material facts alleged in the complaint.[39] In cases where the defendant challenges the factual basis of the plaintiff's assertion of jurisdiction, the plaintiff must show jurisdiction

---

[36]   *See In re Standard & Poor's Rating Agency Litig.*, No. 13 MDL. 2446, 2014 WL 2481906, at *8 (S.D.N.Y. June 3, 2014) (citing *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 213 (2d Cir. 2013)).

[37]   *Al-Khazraji v. United States*, 519 Fed. App'x 711, 713 (2d Cir. 2013) (citing *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quotation marks omitted)).

[38]   *In re Standard & Poor's Rating Agency Litig.*, 2014 WL 2481906, at *2.

[39]   *See Hijazi v. Permanent Mission of Saudi Arabia to United Nations*, 403 Fed. App'x 631, 632 (2d Cir. 2010).

8

"affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[40]  In fact, "in dismissing a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), a court may 'refer to evidence outside the pleadings.'"[41]

### B.    Failure to Exhaust Administrative Remedies

The exhaustion of administrative remedies doctrine is a well-established precept of administrative law.[42]  The doctrine "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."[43]  Quite often a party cannot seek judicial relief until he has exhausted the "prescribed administrative remedies."[44]  The doctrine applies in many situations, most notably where the "relevant statute provides that certain administrative

---

[40]     *Jordan v. Verizon Corp.*, 391 Fed. App'x 10, 12 (2d Cir. 2010) (citing *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quotation marks omitted)).

[41]     *Burfeindt v. Postupack*, 509 Fed. App'x 65, 67 (2d Cir. 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

[42]     *See McKart v. United States*, 395 U.S. 185, 193 (1969).

[43]     *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992).

[44]     *Id.* at 144 (citing *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50-51 (1938)).  *Accord American Benefits Grp., Inc. v. National Ass'n of Sec. Dealers,* No. 99 Civ. 4733, 1999 WL 605246, at *5 (S.D.N.Y. Aug. 10, 1999) (citing *Touche Ross & Co. v. SEC*, 609 F.2d 570, 574 (2d. Cir. 1979) (holding that "a litigant is required to pursue all of his administrative remedies before he will be permitted to seek judicial relief")).

procedures shall be exclusive."[45]  A party seeking to challenge the NASD rules must fully exhaust all available administrative remedies.[46]

This Circuit has previously stated that "normally we will not tolerate the interruption of the administrative process to hear piecemeal appeals of a litigant's claims on the merits" because the exhaustion doctrine was created to prevent such litigation.[47]  The doctrine gives agencies the opportunity to apply their expertise and "build a record upon which the reviewing administrative agency may engage in effective review."[48]

## C.   Exceptions to the Exhaustion of Remedies Doctrine

The doctrine, however, is also subject to numerous exceptions.[49]  In *Guitard v. U.S. Secretary of Navy*, the Second Circuit acknowledged that a party may not need to exhaust administrative remedies when:

> (1) available remedies provide no genuine opportunity for adequate relief;

---

[45]      *McKart*, 395 U.S. at 193.

[46]      *See American Benefits Grp., Inc.,* 1999 WL 605246, at *8; *see also MFS Sec. Corp. v. SEC*, 380 F.3d 611, 622 (2d Cir. 2004) (holding that the exhaustion of remedies doctrine applies to self-regulated organizations).

[47]      *Touche Ross & Co.*, 609 F.2d at 574-75.

[48]      *MFS Sec. Corp.*, 380 F.3d at 622.  *Accord McKart*, 395 U.S. at 192.

[49]      *See McKart*, 395 U.S. at 193.

(2) irreparable injury may occur without immediate judicial relief;
(3) administrative appeal would be futile; and
(4) in certain instances a plaintiff has raised a substantial constitutional question.[50]

Furthermore, in *McCarthy v. Madigan*, the United States Supreme Court recognized that "an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute."[51]

### D.   Stigma-Plus Claim

A "stigma-plus" claim is a subset of procedural due process. It is "brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process."[52] A stigma-plus claim has three elements requiring statements (1) by the government that call into question plaintiff's "good name, reputation, honor, or integrity" or

---

[50]   967 F.2d 737, 741 (2d Cir. 1992).

[51]   503 U.S. at 147-48.

[52]   *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (quotation marks omitted). *Accord S & D Maintenance Co., v. Goldin*, 844 F.2d 962, 970 (2d Cir. 1988) ("A government employee's liberty interest is implicated where the government dismisses him based on charges that might seriously damage his standing and associations in his community or that might impose on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities.") (quotation marks and alterations omitted).

"denigrate [his] competence as a professional and impugn [his] professional reputation in such a fashion as to effectively put a significant roadblock on [his] continued ability to practice [his] profession;" (2) that were public; and (3) that "were made concurrently in time to [his] dismissal from government employment."[53]

## E.    State Action

The Second Circuit has held that "[a] threshold requirement of plaintiff's constitutional claims is a demonstration that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action."[54]  A private entity can be engaged in state action if its actions are "fairly attributable" to the state.[55]  In *Blum v. Yaretsky*, the Supreme Court established criteria to help

---

[53]    *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (quotation marks omitted). With regard to the publication requirement, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest."  *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005).

[54]    *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999).  *Accord D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.,* 279 F.3d 155, 161 (2d Cir. 2002) (stating that "the Fifth Amendment restricts only governmental conduct, and will constrain a private entity only insofar as its actions are found to be fairly attributable to the government") (quotation marks omitted)).

[55]    *D.L. Cromwell Inv., Inc.*, 279 F.3d at 161.

determine if a private entity has the requisite nexus to the state such that it can be held to a constitutional standard:

> First, . . . [t]he complaining party must . . . show that there is a sufficiently close nexus between the State and the challenged action . . . [C]onstitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains . . .
>
> Second, . . . a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval . . . is not sufficient to justify holding the State responsible for those initiatives. . .[56]

## IV.    DISCUSSION

FINRA maintains that the Court lacks subject matter jurisdiction to hear this case because Santos-Buch failed to exhaust his administrative remedies.[57] Santos-Buch, citing *Guitard*, contends that the exhaustion of remedies doctrine does not apply to him.[58]  Santos-Buch's argument fails because none of the *Guitard* exceptions apply.  In short, Santos-Buch was required to challenge FINRA rules with the SEC before seeking judicial review.

---

[56]    *Desiderio,* 191 F.3d at 206 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)).

[57]    *See* Def. Mem. at 1.

[58]    *See* Am. Compl. ¶ 16.

**A.     Santos-Buch Has Not Met His Burden of Establishing the Substantial Constitutional Question Exception**

Santos-Buch argues that he raises a "substantial constitutional question" which renders the exhaustion of remedies doctrine inapplicable.[59]  To meet this requirement, Santos-Buch claims that the retrospective effect of FINRA's 2009 Amendment to Rule 8312 deprives him of constitutionally protected interests under the Fifth Amendment Due Process Clause.[60]  This argument fails for two reasons.  *First*, Santos-Buch has no constitutionally vested rights.  *Second*, FINRA is not a state actor that can be held to constitutional standards.

**1.     Santos-Buch Has No Constitutionally Vested Rights**

Although Santos-Buch relies on *Doe v. City of New York* to assert that his due process privacy rights have been violated, the privacy claim asserted in *Doe* is distinguishable from the privacy claim at issue here.[61]  In *Doe*, the plaintiff was seeking to protect the confidentiality of his medical information.[62]  The *Doe* court reasoned that "the right to confidentiality [of] personal medical information recognizes there are few matters that are quite so personal as the status of one's

---

[59]     *Id.*

[60]     *See id.* ¶ 9.

[61]     15 F.3d 264, 266 (2d Cir. 1994).

[62]     *See id.* at 267.

health, and few matters the dissemination of which one would prefer to maintain greater control over."[63]   Santos-Buch, by contrast, is seeking to limit public disclosure of a disciplinary action.   Santos-Buch's disciplinary action is not comparable to highly confidential medical information.

Next, Santos-Buch alleges a constitutionally vested interest in his reputation under the "stigma-plus" test.[64]   This argument also fails.   *First*, Santos-Buch has not satisfied the "stigma-plus" test because he is not a government employee.[65]   *Second*, relying on *Valmonte v. Bane*, Santos-Buch argues that public disclosure of his disciplinary action places an undue burden on his employment prospects and injures his reputation.[66]   In *Valmonte*, however, the court held that "Valmonte is not going to be refused employment because of her reputation; she will be refused employment simply because her inclusion on the list results in an added burden on employers who will therefore be reluctant to hire her."[67]   But public disclosure of Santos-Buch's disciplinary action places no undue burden on

---

[63]   *Id.*

[64]   *See* Am. Compl. ¶ 41.

[65]   *See Patterson,* 370 F.3d at 330.

[66]   18 F.3d 992, 1001 (2d Cir. 1994).

[67]   *Id.*

employers.  Instead, it reveals to potential clients that Santos-Buch has previously violated a fair practice rule.  As such, Santos-Buch has no vested due process interests and raises no "substantial constitutional questions" that would allow him to avoid exhausting the administrative remedies made available to aggrieved parties under the Exchange Act.[68]

### 2.    FINRA Is Not a State Actor

Santos-Buch's claims also fail to raise a "substantial constitutional question" because FINRA is not a state actor.  Santos-Buch argues that because Congress and the SEC have authorized FINRA to regulate member firms, it is "entwined" with the state and should be considered a state actor.[69]  When entwinement exists it will support the conclusion that a private organization's actions are fairly attributable to the state.[70]  In *Brentwood Academy v. Tennessee Secondary School Athletic Association,* the Supreme Court noted that "[s]tate

---

[68]    *See* 15 U.S.C. § 78o-3.  In any event, Santos-Buch's breach of contract and invasion of privacy claims likely lack merit because he agreed to the terms of the AWC, which allows public dissemination of his disciplinary action as the NASDR may deem appropriate.  *See* Letter of Acceptance, Waiver and Consent No. C11960032, Ex. A to Def. Mem. at 4 (stating that the NASD may "make such public announcement concerning this agreement . . . as NASDR may deem appropriate").

[69]    Plaintiff's Opposition to Motion to Dismiss ("Opp. Mem.") at 6.

[70]    *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 302 (2001).

Board members are assigned ex officio to serve as members of the [Tennessee Secondary School Athletic Association's] board of control and legislative council, and the Association's ministerial employees are treated as state employees to the extent of being eligible for membership in the state retirement system."[71]  As a result, the Court held that the Tennessee Secondary School Athletic Association was entwined with the state and engaged in state action.[72]  By contrast, the NASD is not engaged in state action because it receives no federal funding, is a private corporation, and its Board of Governors and Board of Directors are not required to be government officials or appointed by government officials.[73]  Moreover, the Second Circuit has repeatedly held that the NASD is a private actor.[74]  Even after *Brentwood*, the Second Circuit has reiterated that "the fact that a business entity is

---

[71]     *Id.* at 300.

[72]     *See id.* at 302.

[73]     *See Desiderio*, 191 F.3d at 206.  Moreover, the Exchange Act offers no private right of action against  FINRA for failing to follow its own rules.  *See id.* at 208 (holding that "there is no private right of action available under the Securities Exchange Act . . . to challenge an exchange's failure to follow its own rules").

[74]     *See, e.g., Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138-39 (2d Cir. 2002) (holding that even after *Brentwood* the NASD is not a private entity engaged in state action).

subject to 'extensive and detailed' state regulation does not convert that organization's actions into those of the state."[75]

### B. Santos-Buch Has Not Met His Burden of Establishing Any Other Exception

*First*, relying on *Barbara v. New York Stock Exchange, Inc.*, Santos-Buch claims that the available administrative remedies offer "no genuine opportunity for relief" because he is seeking money damages which cannot be obtained through the administrative process.[76]  But this reliance is misplaced.  In *Barbara*, the Second Circuit held that a plaintiff seeking money damages under the Exchange Act was not required to exhaust his administrative remedies because "the administrative review provisions of the [Exchange] Act do not provide for money damages."[77]  Nevertheless, the court dismissed the suit, which sought primarily damages, holding that a self-regulated organization, like the Exchange, is "immune from damages claims with respect to its conduct of disciplinary

---

[75]     *Id.* at 138. (quoting *Desiderio*, 191 F.3d at 206).

[76]     99 F.3d 49, 57 (2d Cir. 1996) (citations and quotation marks omitted) (holding that when a plaintiff primarily seeks money damages under the Exchange Act the court should not dismiss the plaintiff's money damages claims for failure to exhaust administrative remedies).

[77]     *Id.*

proceedings."[78]  Therefore, because Santos-Buch's claim for money damages must be dismissed, his remaining claims require exhaustion.

*Second*, Santos-Buch argues that an appeal to the SEC would be futile because the SEC is not competent to hear questions of constitutional law.[79] Because Santos-Buch does not raise a "substantial constitutional question" he has also failed to meet his burden of proving that he is entitled to this exception.[80] *Third*, Santos-Buch has failed to allege any facts establishing that irreparable injury may occur without immediate judicial relief.  In sum, Santos-Buch has failed to exhaust his administrative remedies prior to bringing this action.

## V.    CONCLUSION

---

[78]    *Id.* at 59 (holding that "absolute immunity is particularly appropriate in the unique context of the self-regulation of the national securities exchanges"); *see also Scher v. National Ass'n of Sec. Dealers, Inc.*, 386 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) ("it is by no means inconsistent to find that, on the one hand, the NASD exercises insufficient state action to trigger constitutional protections . . . while nevertheless holding that the NASD is entitled to absolute immunity in the exercise of its quasi-public regulatory duties.").

[79]    *See* Opp. Mem. at 18-19.

[80]    This argument misapplies the exhaustion of remedies doctrine, which "require[s] that the agency be given a chance to discover and correct its own errors."  *McKart*, 395 U.S. at 195.  *Accord MFS Sec. Corp.,* 380 F.3d at 622 (stating that even obvious errors by an agency do not excuse a party from exhausting available administrative remedies).

For the reasons set forth above, FINRA's motions to dismiss are GRANTED.  The Clerk is directed to close these motions [Docket Nos. 9, 19] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 7, 2014

- Appearances -

**For Plaintiff:**

Eric W. Berry, Esq.
Eric W. Berry, PC
509 Madison Ave
New York, NY 10022
(212) 355-0777

Paul R. McMenamin, Esq.
McMenamin Law Group
555 Fifth Avenue, 11th Floor
New York, NY 10017
(646) 670-7370

**For Defendant:**

Terri L. Reicher, Esq.
National Association of Securities Dealers
Office of General Counsel
1735 K Street, NW
Washington, DC 20006-1500
(202) 728-8967